Joseph THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 59974.

Court of Criminal Appeals of Texas,
Panel No. 3.

Dec. 17, 1980.

On Rehearing July 1, 1981.

Rehearing Denied Sept. 23, 1981.

 

Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., John Tatum, Todd Meier, L. S. Eubanks, Jr., and Karen Chilton Beverly, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ROBERTS, ODOM and CLINTON, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for theft. Punishment, enhanced by allegation and proof of two prior convictions, was assessed at life.

In his fifth ground of error appellant contends it was error for the trial court to deny his motion to quash the indictment. The indictment alleged that appellant did:

> "... knowingly and intentionally exercise control over property, other than real property, to-wit: four automobile hubcaps, of the value of at least $200.00 but less than $10,000, without the effective consent of Doyle W. Traylor, the owner thereof, and with intent to deprive the said owner of said property, ..."

In the second paragraph of his motion to quash appellant alleged:

> "The indictment alleges that Doyle W. Traylor is the 'owner' of the property. Owner is a special legal term. Art. 1.07, Sec. 24 P.C. [sic]. That statute gives several definitions of the term. The indictment is not sufficiently certain because it fails to allege the nature of the ownership."

At a hearing prior to trial the court denied this part of the motion to quash.

On appeal appellant argues that because there are several ways in which a person may be an owner, the indictment did not give him full and fair notice of the charges against him. He points to V.T.C.A., Penal Code Sec. 1.07(a)(24), which provides:

"(24) 'Owner' means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

The test for whether a charging instrument gives adequate notice in the face of a motion to quash was stated in *Drumm v. State*, Tex.Cr.App., 560 S.W.2d 944:

"Because of the fundamental notions of fairness that require adequate notice of the nature of the charges against the accused in our system of justice, a timely claim of inadequate notice requires careful consideration. This calls for examination of the criminal accusation from the perspective of the accused. . . .

"The accused is not required to anticipate any and all variant facts the state might hypothetically seek to establish. When the defendant petitions for sufficient notice of the state's charge by motion to quash adequately setting out the manner in which notice is deficient, the presumption of innocence coupled with his right to notice requires that he be given such notice."

See also, *Cruise v. State*, Tex.Cr.App., 587 S.W.2d 403; *Haecker v. State*, Tex.Cr.App., 571 S.W.2d 920.

In this case appellant adequately set out the manner in which notice was deficient. Just as the information in *Drumm*, supra, was insufficient to withstand the motion to quash because it did not specify which of the statutory alternatives would be relied on by the State, so the indictment in this case failed to state which manner of ownership would be relied on by the prosecution. Appellant was entitled to notice of this, and it was error to deny his motion to quash. The conviction must be reversed and the indictment dismissed. *Brasfield v. State*, Tex.Cr.App., 600 S.W.2d 288, 298 (opinion on rehearing).

In his fourth ground of error appellant raises a similar contention based on his motion to quash for failure of the indictment to give him adequate notice on the matter of lack of effective consent. He there points to the expansive definition of effective consent in V.T.C.A., Penal Code Sec. 31.01(1), (2) and (4). For this additional reason the indictment should have been quashed. We note this additional ground so that any reindictment in this case may address both deficiencies in the notice.

■ Finally, we must address the ground of error challenging the sufficiency of the evidence to prove the value of the property as alleged. Traylor, the owner, testified he had purchased the stolen property two or three weeks prior to the offense, that he paid over $400 for the set of hubcaps, and that when returned to him by the police they were only slightly scratched. Cullins, who was in the business of wholesaling and retailing property like that stolen here, testified that the fair market value of a set such as stolen here, two to three weeks old and not damaged, would be about $400. Although he admitted that he could not state the value of a *particular* set without seeing it, his testimony of the value of a set meeting the stated description was sufficient to prove the value of Traylor's set. The ground of error is overruled.

For the reasons stated, the judgment is reversed and the indictment dismissed.

Before the court en banc.

### OPINION ON STATE'S MOTION FOR REHEARING

McCORMICK, Judge.

On original submission this cause was reversed based on a motion to quash. Succinctly stated, the motion to quash directs itself to two statutory elements of theft, to wit: "owner" and "without effective consent." Appellant argued that, since the statutory definitions include various types of owners and several means of proving lack of effective consent, the indictments should be quashed. The panel agreed with appellant and found reversible error in the trial court's overruling the motion to quash. We now grant rehearing, and upon reconsideration, find the panel's holding erroneous.

## I.

■ The general rule is that a motion to quash will be allowed if the *facts* sought are *essential* to giving notice. However, unless a fact is essential, the indictment need not plead evidence relied on by the State. *Smith v. State*, 502 S.W.2d 133 (Tex. Cr.App.1973); *Cameron v. State*, 401 S.W.2d 809 (Tex.Cr.App.1966). Moreover, when a term is defined in the statutes, it need not be further alleged in the indictment. *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974); *May v. State*, 618 S.W.2d 333 (1981).

### A.

■ In *Phillips v. State*, 597 S.W.2d 929 (Tex.Cr.App.1980), Presiding Judge Onion dealt with a contention almost identical to the one presented today. In that case, the defendant filed a motion to quash attacking the allegations "intent to violate and abuse * * * sexually." Although sexual abuse encompasses different acts,[1] it was wisely held that no error occurred because "the information requested was *essentially evidentiary*, rather than being required for purposes of notice and plea in bar." *Smith, Cameron, American Plant Food*, and *Phillips* all implicitly stand for the same proposition. The Legislature has established offenses and the elements constituting those offenses. The terms and elements are further defined within the Penal Code. Under these cases, the definitions of the terms and elements are *essentially evidentiary* and need not be alleged in the indictment. This is, in effect, the general rule that, subject to rare exceptions, an indictment which tracks the words of the penal statute in question is legally sufficient. *Phillips v. State*, supra; *May v. State*, supra; *Parr v. State*, 575 S.W.2d 522 (Tex.Cr.App.1978). Thus, only "owner" need be alleged with no further elaboration.

■ "Effective consent", as illustrated under V.T.C.A. Penal Code, Section 31.01(4), is not subject to the motion to quash for the identical reason. It is purely evidentiary—a matter of proof.[2] The State need only allege no consent or no "effective consent."

### B.

■ Additionally, under Article 21.11, V.A.C.C.P., an indictment is sufficient when it alleges the offense in ordinary and concise language with a degree of certainty as to give the defendant notice of the particular offense and to enable the pronouncement of the proper judgment. Nowhere is the State required to plead absolute factual allegations. See Article 21.04, V.A.C.C.P.

■ Of equal importance is Article 21.12, V.A.C.C.P., which states:

"When a statute defining any offense uses special or particular terms, indictment on it may use the general term which, in common language, embraces the special term. To charge an unlawful sale, it is necessary to name the purchaser."

The term "owner" is a general term. At trial, the evidence may reveal that the owner has a particular ownership—title, possession, or greater right to possession. However, Article 21.12 only requires the general term "owner" and not the special type of owner.

### C.

The cases cited by the panel decision are inappropriately applied to the case before us. The panel relies on *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977); *Cruise v. State*, 587 S.W.2d 403 (Tex.Cr.App.1979),

---

1. Under V.T.C.A. Penal Code, Section 21.04, sexual abuse may occur either through intercourse or deviate sexual intercourse. Under Section 21.01(1) deviate sexual intercourse can occur in six different manners. Sections 21.-01(3) allows sexual intercourse to be performed in only one manner. Thus, there are seven different means to commit sexual abuse.

2. We agree with much of Judge Clinton's analysis concerning "effective consent." Section 31.01(4) negating effective consent is not to be interpreted as an exhaustive list. The State need only allege the "standard element of the offense of theft, all else with respect to it becomes purely evidentiary—a matter of proof."

and *Haecker v. State,* 571 S.W.2d 920 (Tex. Cr.App.1978). They are inapplicable because they do not involve motions to quash addressed to terms that are already defined in the penal statutes.

In *Drumm,* the State alleged that the defendant drove his vehicle while his license was suspended under Article 6687b, Section 24, V.A.C.S. The motion to quash inquired as to which of the subsections of Section 24 the State was referring. Section 24 provides for automatic suspension of the driver's license without notice upon final conviction for any one of *several different* offenses. Since the information failed to give him notice of which offense the suspension was predicated upon, the defendant was denied the opportunity to prepare a defense. The underlying offense is what makes the defendant's conduct criminal in nature. If the underlying offense is either void or not final, then the defendant's conduct is not an offense.

In *Cruise,* the defendant moved to quash an indictment for robbery by causing bodily injury pursuant to V.T.C.A. Penal Code, Section 29.02(a)(1). The motion was not directed at which type of bodily injury as defined under V.T.C.A. Penal Code, Section 1.07(a)(7); rather, it was directed at what acts (i. e., striking, kicking, shooting, or stabbing) *caused* the bodily injury. Because factual allegations were required to give notice of the defendant's alleged acts so as to allow him to prepare a defense, the trial court erred in failing to quash the indictment.

The third case, *Haecker,* involved the quashing of an information alleging the defendant "tortured" an animal. Because the word "torture" can encompass a diverse number of acts, the motion was proper in order to give the accused notice of his conduct—i. e., the acts he allegedly did which were not sufficiently statutorily defined.

The majority relies on these three cases to support the proposition that a term, which is defined in the penal code, must be clarified pursuant to a motion to quash. Of course, some allegations will be so vague as to deny notice to the accused. See, e. g.,

*Amaya v. State,* 551 S.W.2d 385 (Tex.Cr. App.1977) (false statement too vague in welfare fraud); *Lindsay v. State,* 588 S.W.2d 570 (Tex.Cr.App.1979) ("overt act" in conspiracy indictment too vague). However, as stated in *American Plant Food* and implicit in *Phillips,* if the term is defined in the statute, the definitions are *essentially evidentiary* and need not be alleged. The pleading, when alleged in terms of the statute, is rarely insufficient. Article 21.11, supra; *Phillips v. State,* supra.

## II.

We additionally note that the panel opinion makes a fallacious assumption. It assumes that upon reindictment the State is required to allege which type of owner under V.T.C.A. Penal Code, Section 1.07(a)(24), and how consent is "ineffective" under V.T.C.A. Penal Code, Section 31.01(4). This fallacy, of course, ignores conjunctive and multiple count pleadings.

### A.

Under Article 21.24, V.A.C.C.P., the Legislature allows multi-count indictments:

"(b) A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense."

See, e. g., *Koah v. State,* 604 S.W.2d 156 (Tex.Cr.App.1980). Such pleadings have, of course, passed constitutional muster and do not offend "fundamental" constitutional protections. *Ingraham v. United States,* 155 U.S. 434, 15 S.Ct. 148, 39 L.Ed. 213 (1884); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

The reason for conjunctive and multi-count indictments is firmly established. In the early case of *Boren v. State,* 23 Tex. App. 28, 4 S.W. 463 (1887), this Court focused on the distinct purpose:

"... The object is what it appears to be; * * * to vary what is meant to be the one accusation, so as, at the trial, to avoid an acquittal by any unforeseen lack of harmony between allegation and proofs, ..."

Also see, *Johnson v. State*, 52 Tex.Cr.R. 201, 107 S.W.2d 52, 53 (1908); *Square v. State*, 145 Tex.Cr.R. 219, 167 S.W.2d 192 (1943). More recently, Presiding Judge Onion reaffirmed *Boren* in an unanimous decision holding that:

"... an indictment may contain as many counts charging the same transaction as is thought necessary to meet the proof as it transpires and prevent a variance...."

*Ex parte Easley*, 490 S.W.2d 570, 571 (Tex. Cr.App.1972). Therefore, it is clear that an indictment may and should be comprised of as many counts as are necessary to meet the contingencies of the evidence.

It is also interesting to note that, under the present case, the defendant was given notice of the "owner", and lack of "effective consent." Under the panel's holding, the State will re-indict and, instead of alleging the terms generally, they will include a conjunctive pleading or a multitude of separate counts alleging the three types of ownership with the nine ways of showing lack of "effective consent." [3] Article 21.24, supra. The indictment may, at least, contain 27 counts instead of one. The resulting pleading will give the defendant no more notice or particularized pleading than he originally received. The particularized "notice" that the panel asserts will result never materializes.

**B.**

We realize that there is language to the effect that, once a motion to quash is sustained, the State may "precisely distinguish" the alleged conduct. However, the directive to "precisely distinguish" the alleged conduct is not to be applied to those terms in the penal code that have already been statutorily defined. If such a statement were allowed to encompass such terms, then the result has dramatic overtones. It is easy to envision a circumstance where a motion to quash directed at a theft indictment attacks the entire instrument; to wit, the *culpable mental state*, the *owner*,

the *effective consent*, any *coercion* or *deception*, the *appropriation*, the *property* or *service*, and the *deprivation*.

Such "particularized" pleadings, of course, ignore the statutory authority given the State under Article 21.24(b), supra.

The alternative available to the State to anticipate all possible variations in proof is multiple counts and conjunctive pleadings and indictments. However, even this method has distinct drawbacks in the face of the panel's motion to quash. As stated, the State will re-indict utilizing Article 21.24, supra, to cover any contingencies that may arise under the facts. *Koah v. State*, supra; *Ex parte Easley*, supra.

The only viable alternative is allowing the trial judge sound discretion in granting a motion to quash. *Lamb v. State*, 98 Tex. Cr.R. 358, 265 S.W. 1035 (1924). Reaffirmation of this rule allows this Court to review the trial court's action on a case by case basis. The motion to quash will be granted where the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *Haecker v. State*, supra; *Cruise v. State*, supra; *Amaya v. State*, supra; *Lindsay v. State*, supra; *Phillips v. State*, supra.

**III.**

Regarding the allegation of owner, we can perceive of no situation where the type of owner will either assist or affect the defense. Whether the owner has title, possession, or greater right to possession will not benefit a defendant, and does not go to giving him *notice of his alleged act*.

The defendant may assert joint title or joint possession but that defense is available regardless of the type of owner alleged. In fact, a defendant's joint ownership may be ineffective. V.T.C.A. Penal Code, Section 31.10, states:

"It is no defense to prosecutor under this chapter that the actor has an interest in the property or service stolen if anoth-

---

**3.** Under Section 31.01(4), there are eight ways to show lack of "effective consent." The ninth

method is showing total absence of consent. Again, we refer to footnote 2.

er person has the right of exclusive possession of the property."

Moreover, any claim of innocence or ignorance of the theft is available to the defendant without ownership elaboration. The need to distinguish the type of owner in the pleading is just not necessary.

Summarizing these grounds of error, we hold that the terms "owner" and "effective consent" need not be further clarified. The general terms are neither vague nor indefinite because they are statutorily defined. *More importantly, the term "owner" does not go to an act or omission of the defendant.* See, V.T.C.A. Penal Code, Section 1.07(a)(1). Since there was no clear abuse of discretion in refusing to quash the indictment, no error is shown.

We now address the other contentions submitted on appeal by appellant.

■ In two grounds of error, appellant complains that the testimony of the arresting officers concerning ownership of the stolen property (hubcaps) was hearsay. Both officers testified that, after pursuing appellant in a high-speed automobile chase, they apprehended him and returned to the scene of the offense. The officers testified, over hearsay objection, that a Mrs. Traylor identified the hubcaps as coming from her Cadillac.

Even if we were to hold the trial court's ruling in error, the admission of the hearsay evidence was rendered harmless by the introduction of same or similar evidence in the record without objection. *Huff v. State*, 560 S.W.2d 652, 653 (Tex.Cr.App. 1978). Excluding the alleged hearsay, there is sufficient evidence to prove the Traylors' ownership. Engraved onto the hubcap was Mr. Traylor's driver's license number and the name TRAYLOR. At trial, Mr. Traylor identified the engraved hubcaps as his. The stolen hubcaps were returned to Mr. Traylor after he positively identified them. Accordingly, any error in admission of the hearsay testimony was harmless. Compare, *Stallings v. State*, 476 S.W.2d 679 (Tex.Cr. App.1972). The grounds of error are overruled.

In three related grounds of error, appellant contends that the prosecutor was allowed to refer to the hearsay information as to ownership during jury argument. During argument, the prosecutor twice referred to Mrs. Traylor's identification of the hubcaps to the officers. Appellant's objections were overruled. As previously stated, there is other evidence sufficiently proving the Traylors' ownership of the hubcaps.

■ The general rule is that for a jury argument to constitute reversible error it must (1) be manifestly improper, harmful and prejudicial, or (2) be violative of a statute, or (3) inject new and harmful facts into the case. *Williams v. State*, 607 S.W.2d 577 (Tex.Cr.App.1980). The application of this rule depends on the facts of each case, and necessarily involves viewing the probable effect on the minds of the jurors. *Hodge v. State*, 488 S.W.2d 779 (Tex.Cr.App.1972). Against this background, we find the prosecutor's argument referring to hearsay testimony harmless. The ownership of the hubcaps had been independently established. No new or harmful fact was injected into the case. *Williams v. State*, supra. The grounds of error are overruled.

Ground of error eight contends that the trial court erred in overruling appellant's objection that the prosecutor's jury argument constituted unsworn testimony that bolstered a State's witness. The complained of argument and objection are as follows:

"... [T]hey got out and they looked over the ledge and then one officer had his binoculars, they told you how the car pulled in facing the Cadillac, and how this man here—now, Officer Taylor—I mean, Officer Ledbetter was very *honest* and if he wasn't—

"MR. MITCHELL: Objection, Your Honor, that is *bolstering of the witness.*

"MR. EUBANKS: It is a reasonable deduction from the testimony.

"MR. MITCHELL: Excuse me, my objection is before the Court.

"THE COURT: Overruled.

"MR. MITCHELL: Note our exception.

"MR. EUBANKS: It is a reasonable deduction from the evidence that he was very honest and he could have told you that he saw this man but he didn't, he said he couldn't see, he, himself, could not see that well, but he did know that two black males got out of the car, the driver and the passenger, . . ."

■ The statement of the prosecuting attorney's use of the word "honest" *may* be bolstering of the testimony of the officer. *Basek v. State,* 163 Tex.Cr.R. 632, 294 S.W.2d 810 (1956). Usually, if the unsworn statement goes to disputed facts or if the credibility of the witness is a critical issue, then the alleged bolstering may require reversal. *Menefee v. State,* 614 S.W.2d 167 (1981). However, in the case before us, the alleged bolster went to the uncontested inability of the officer to recognize appellant, not to disputed facts or critical credibility. *Menefee v. State,* supra. The argument cannot be said to have prejudiced appellant —indeed, such bolstering was favorable to appellant. The ground of error is overruled.

Appellant advances several contentions dealing with the court's charge applying the law to the facts. He specifically contends that the terms "owner" and "effective consent" involve various facts and the State must elect which set of facts are to be submitted to the jury. A quick review of the record reveals the court correctly defined "consent" and "owner" in the abstract instructions. At appellant's insistence, the definition of lack of "effective consent" was given.

■ Appellant ignores the fact that any ambiguity or injection of the "effective consent" issue was at his own request. Since there was no evidence of any consent, much less ineffective consent, the trial court had limited "consent" as: assent in fact, whether express or apparent. V.T.C.A. Penal Code, Section 1.07(a)(9). Accordingly, appellant may not now complain of possible prejudicial effects from a charge he himself requested. *Ayers v. State,* 606 S.W.2d 936 (Tex.Cr.App.1980); *Cadd v. State,* 587 S.W.2d 736 (Tex.Cr.App.1979).

■ Considering the desired limitation on the term "owner", we find no error. Compare, *Jackson v. State,* 571 S.W.2d 1 (Tex.Cr.App.1978) (charge on term "appropriate" not an enlargement on allegation in indictment of "exercise control"). Moreover, the evidence supports a finding of all three types of ownership under Section 1.07(a)(24), supra. Even if we were to find appellant's argument persuasive, the court's general term "owner" charged on all theories supported by the evidence. *Sullivan v. State,* 112 Tex.Cr.R. 406, 16 S.W.2d 1086 (1929). No error is shown.

■ Next, appellant challenges the action of the trial court in overruling his objection to the charge. The indictment alleged theft by exercising control over property other than real property without the owner's effective consent. V.T.C.A. Penal Code, Sections 31.01(5), 31.03(a), (b)(1). The jury charge instructed on theft by appropriating the property. The definition of "appropriate" in Section 31.01(5), supra, includes "to acquire or otherwise exercise control over property other than real property." This definition was the only one given in the abstract charge.

In *Jackson v. State,* supra, this Court held that the definition of "appropriate" in the jury charge restricts its use to the means alleged in the indictment, to wit: exercise control. The charge using appropriate, therefore, was not an enlargement upon the allegations in the indictment and could not be deemed fundamental error. We reaffirm the holding of *Jackson* that appropriate is not an enlargement upon the allegation of exercise control. Accordingly, the ground of error is overruled.

Appellant's last ground of error attacks the sufficiency of the evidence. We note, however, that this contention was dealt with on original submission. We defer to the panel's proper disposition of the issue. The ground of error is overruled.

The State's motion for rehearing is granted, and the judgment is affirmed.

ODOM, J., dissents.

CLINTON, Judge, concurring in part and dissenting in part.

The Opinion on State's Motion for Rehearing uses such a distressing mix of legal concepts to reach the result desired in overruling the fifth ground of error that much mischief is sure to follow.[1] First, however, I express my reasons for disagreeing with the panel's reasoning in sustaining the fourth ground of error.

It will be recalled that the indictment charges appellant exercised control over four hubcaps "without the effective consent" of their owner et cetera. The motion to quash complained of lack of notice with respect to the matter of lack of effective consent, and appellant pointed to what the panel opinion characterizes as "the expansive definition of effective consent" in finding that the motion to quash should have been granted for that additional "deficienc[y] in the notice." I respectfully submit that reasoning is untenable.

Theft, as alleged in the case at bar, is unlawful appropriation—by one means or another—with intent to deprive the owner of property and "without the owner's effective consent," V.T.C.A. Penal Code, §§ 31.-03(a) and (b). Thus, if the offending conduct and the specific intent are alleged and proven, all that remains is that the owner did not effectively consent to the transaction. That allegation may be proven in many ways, so the definition of "effective consent" in *id.*, § 31.01(4),[2] though "expan-

sive,"[3] certainly does not purport to be limitation on manner or means which may be shown. A purse snatcher, for example, takes it without effective consent of its owner, for that is inherent in his act of snatching. So when an indictment alleges, as here, "without effective consent" it does not necessarily mean whatever "consent" *was given* is ineffective on account of one of the negative situations set out in the definition. It seems to me that once the State alleges this standard element of the offense of theft, all else with respect to it becomes purely evidentiary—a matter of proof.[4] To hold that a motion to quash is good, under *Brasfield v. State*, 600 S.W.2d 288, 298 (Tex.Cr.App.1980) (Opinion on Rehearing), will require more makework.[5] Yet, in the case of the purse snatcher, the grand jury has already alleged all there is to say about the offense, legally and factually.

I, therefore, agree to granting the State's motion for rehearing with respect to the fourth ground of error. Now I turn to the majority's treatment of the fifth ground of error.

First it states, "The general rule is that a motion to quash will be allowed if the facts sought are essential to giving notice."[6] The highly doubtful assertion, I note, is not followed by any cited authority. All cases in the balance of the paragraph are rooted in one which is cited, *Cameron v. State*, 401 S.W.2d 809 (Tex.Cr.App.1966)—a decision that predates the present penal code and

---

1. We all know that the bench and bar are anxiously awaiting the resolution of both issues presented in this cause. The opinion for the Court produces a ruling, alright, but its underlying rationale is terribly flawed in twisting *principled rules of pleading a criminal accusation* into propositions through which it seeks to support a result. The Court has not heard or read the last of this matter, I fear.

2. Shorthandedly, the four negatives to effective consent are:
   (A) induced by deception or coercion;
   (B) given by one known to be without authority to consent;
   (C) given by one known to be incapable of consenting;
   (D) given solely to detect commission of an offense.

3. All emphasis is mine unless otherwise indicated.

4. Having written that, however, it occurs that an exception to the indictment in a motion to quash which asserts, say, that *appropriation* at issue was *with* consent and calls upon the State to elucidate which of the four negatives rendered consent ineffective, might be good. The State would then, in effect, be directed to join issue on a matter of notice not initially presented clearly in the indictment.

5. A feature of *Brasfield v. State*, supra, to which I objected then.

6. The underscoring is emphasis in the original opinion.

does not even purport to apply pleading rules of the code of criminal procedure.[7] The meaning of *Cameron v. State*, supra, in this respect, was clearly discerned by Judge Odom, writing for the Court in *Smith v. State*, 502 S.W.2d 133, 134 (Tex.Cr.App. 1973)—also among the cases cited by the majority in its mix of concepts—in overruling the first ground of error contending that "the indictment in this cause is *fatally defective* because there is no allegation that the truck in question was actually appropriated;" it was, accordingly, observed, "No motion to quash the indictment was filed prior to trial," and in *that* context the Court found that "the indictment in question did not *need* to allege that appellant appropriated the truck." The point is obvious: The test for a motion to quash is not supplied by the standard of testing an indictment for fundamental error. *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Cr.App. 1974) is widely supposed to have made that plain, but the majority has missed the point.[8]

*Phillips v. State*, 597 S.W.2d 919 (Tex.Cr. App.1980) is seen by the majority as "deal[ing] with a contention almost identical to the one presented today." The majority is myopic if it cannot perceive any distinction between an allegation of a mental state which accompanies conduct,[9] a spe-

cific intent, on the one hand, and an allegation of ownership that fails to delineate whether the named person is an owner because he has title to the property, has possession of the property or has a greater right to possession of the property than the accused, V.T.C.A. Penal Code, § 1.07(a)(24). Though, as the majority observes, "there are seven different *means* to commit sexual abuse," note 1, an *intent* to violate or abuse another sexually as so ephemeral—usually only inferable from words or deed—that the grand jury can hardly be expected to do more than allege as a material fact the particular intent prescribed by statute, Article 21.05,[10] V.A.C.C.P., and leave the inference to be drawn by the factfinder from whatever one or more means, if any, are shown by the proof.[11] On the other hand, mode of ownership is not a matter of intent at all; it arises a state of preexisting facts, perhaps mixed with some principles of law, that go to make one an owner from title, from possession or from greater right of possession, respectively. Ownership by legal definition is thus trifaceted, but each mode may well be mutually exclusive of the other, and there is little transient about either. Accordingly, I do not regard the holding in *Phillips v. State*, supra, as dispositive of the quite distinct issue presented by the indictment and motion to quash in the case at bar.

7. All *Cameron v. State*, supra, does is to reject a denial of due process challenged by restating that the Court "remain[s] convinced that the decisions by this court holding that a conviction for theft by false pretext may be had upon a general indictment for theft are sound and should not be overruled" and, *therefore*, "we adhere to the holding that *such* facts and circumstances are evidentiary matters which need not be alleged."

8. Rather, the majority picks out some dicta in note 3 at page 604, and pretends that *American Plant Food holds* that "when a term is defined in the statutes, it need not be further alleged in the indictment." The attack on the charging instruments there was that they were general, vague and indefinite, especially "in failure to allege the method by which the pollution reached the waters polluted." The Court noted obliquely that "discharge" is defined in the statutes and need not be further alleged and also, "Further allegations as to how the substance was transported from its point of origin

at which it was discharged would be merely evidentiary," inviting comparison to *Cameron v. State*, supra. Similar treatment was given to the term "industrial waste."

9. V.T.C.A. Penal Code, § 1.07(a)(8), states, "'Conduct' means an act or omission and its accompanying mental state." When forbidden by the code, it is an element of the offense within the meaning of *id.* (13)(A).

10. "Where a particular intent is a material fact in the description of the offense, it must be stated in the indictment..."

11. I do not understand the specific intent to violate or abuse sexually is circumscribed by even the seven means ascertained by the majority, or by any means being actually accomplished. It seems to me that such an intent may be found though none of the statutorily suggested means or any other manner is shown.

Stating in an indictment that a named person is "owner" of property is to allege a legal conclusion. Given the special definition of "owner" in V.T.C.A. Penal Code, § 1.07(a)(24), and all its implications, an exception that the allegation is not sufficiently certain because it fails to allege "the nature of the ownership" invokes the constitutional right of an accused "to demand the nature and cause of the accusation against him," Article I, § 10, Constitution of the State of Texas. To say, as does the majority that particularity of ownership "does not assist or effect an accused in preparing his defense" is to ignore the demonstrated complexity of the problem confronted by this Court in, e. g., *Compton v. State*, 607 S.W.2d 246 (Tex.Cr.App.1980). Certainly the matter is not evidentiary until the proper legal theory has been sorted out by the State and identified to the accused prior to trial.[12]

To overruling ground of error five, I respectfully dissent.

ROBERTS, J., joins.

TEAGUE, Judge, dissenting.

Since at least 1882, almost 100 years ago, when Judge Hurt of The Court of Appeals, this Court's predecessor, wrote the opinion of *Huntsman v. State*, 12 Tex.App. 619 (1882), this Court, I thought, had not deviated in principle or decision from the rule that was recently restated in *Brasfield v. State*, 600 S.W.2d 288, 302 (1980).

\*  \*  \*  \*  \*  \*

The right to indictment by a grand jury before answering a felony charge and the right to notice ride in tandem. No one is answerable to a felony charge except on action by a grand jury making such an accusation [3]—and it is from that accusation that notice must be had. The offense so charged may not be amended,

neither by reducing the facts alleged, nor by changing them, nor by adding to them. To allow amendment by supplemental notice from the State violates the rule that notice must come from the facts found and alleged by the grand jury in the indictment. The proper relief upon motion to quash an indictment that gives insufficient notice is to dismiss the indictment, not to amend it. . . .

---

[3] This right may, however, be waived in noncapital cases by following the requirements of Art. 1.141, V.A.C.C.P.

\*  \*  \*  \*  \*  \*

In *Huntsman v. State*, supra,[1] we find the following questions and answers:

\*  \*  \*  \*  \*  \*

What is meant by this right to demand the *nature* and *cause* of the accusation? It is merely the right to have a copy of whatever written charge may have been filed in the court against him? Is it met and satisfied by a pleading which does not state the material elements of the offense for which he is to be tried? Does it permit him to be convicted of embezzlement upon an indictment which does not state a single one of the particular facts or circumstances which would render him guilty of that offense? If not, why not? Because the law has always required 'such a certain description of the offense for which he is to be placed in jeopardy, and statement of the facts by which it is constituted, as will fully identify the charge against him, lest the grand jury should find a bill for one offense, and the defendant be put upon his trial for another, without any authority,' and without his knowing what crime he is required to answer, or being prepared with his evidence to meet the charge; and in such manner that the record of his conviction or acquittal would insure his subsequent

---

12. As to the business in Part II of the majority opinion about "conjunctive and multiple count pleadings," surely it is all said in jest. What selfrespecting prosecuting attorney would have read to the jury at the outset such indicia of the State's own uncertainty of what the accused is supposed to have done?

1. *Huntsman's* teachings are still viable. It was recently cited by Judge Clinton in the opinion of *McDonald v. State*, 608 S.W.2d 192, 194 (1980), which he wrote for a panel of this Court.

protection against another prosecution on the same ground; and because this right is incompatible with any power of a Legislature to dispense with any material allegations in the indictment, requisite to describe and identify the particular offense with that degree of certainty which will enable the accused and the court to know that the offense for which he is put upon his trial is the *same offense* with that for which he stands indicted, in order that he may plead in bar a previous conviction, or acquittal. *Id.* at 626.

\* \* \* \* \* \*

Additionally, Judge Hurt said:

\* \* \* \* \* \*

'The object of the indictment [is] to give the accused reasonable notice of the cause for which he is called upon to make his answer, in order that he may prepare for his defense, and that by its averments he may be protected against a second trial for the same offense, . . .' *Id.* at 633.

\* \* \* \* \* \*

In short, an indictment is the very foundation for the whole criminal proceedings against an accused person. See *Jones v. State*, 611 S.W.2d 87, (Tex.Cr.App.1981).

The panel's unanimous opinion may have been shocking to some, but if one closely analyzes the issue before the Court, it will be found it is not shocking in the least, but actually expounds sound law.[2]

After a grand jury elects to return a true bill against an accused person for a criminal wrong, it is the prosecution that is the arbiter of what language is placed in the indictment, as it is the given prosecutor's responsibility to present to the foreman of the grand jury an indictment for approval and signature before it is returned into open court or assigned to a particular district court. See Art. 20.20, V.A.T.C.C.P., hereinafter cited as C.C.P.

An accused person or his counsel, when the client is confronted with an indictment,[3] will usually first look to the indictment to see if the trial court has jurisdiction of the alleged offense and then will more closely examine the indictment's contents as to the offense alleged against the defendant. Oftentimes, the attorney for the defendant or the defendant himself, if pro se, takes no action toward the indictment, such as filing a motion to quash; he and the defendant being satisfied to go to trial as the indictment is then worded.

If the defendant is convicted, and an appeal comes to this Court, historically, this Court first looks to see if the indictment is fundamentally defective and void, for if it is determined the instrument is void, the trial court had no jurisdiction over the accused in the first place, and we will order the indictment dismissed. Even where this Court determines that an indictment is fundamentally defective and void, this does not mean that the defendant goes free; it only means that the trial court had no jurisdiction over the defendant's person and it was impermissible for the trial court to try the defendant without jurisdiction over his person. A judgment rendered by a trial court without jurisdiction is void and has no meaning in law. "Such a judgment has been characterized as a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant." Freeman and Tuttle, *A Treatise On The Law Of Judgments*, (5th Edition 1925), at p. 645.

If a contention goes to non-evidentiary defects the indictment may have, if first raised on appeal, this Court always looks to see if the appellant first complained in the trial court by way of a motion to quash. Only if he did, will this Court then consider the merits of that contention; otherwise, we only examine the indictment to see if it states an offense against the laws of the

---

**2.** The panel opinion did not, I repeat, did not hold the indictment in this cause void for failure to state an offense; it's holding only goes to the merits of the appellant's motion to quash.

**3.** Cf. footnote 3 in *Brasfield, supra.*

State of Texas and make that determination.

Our law previously provided that an accused person, if dissatisfied with the form or the contents of the indictment or charging instrument, may challenge it in the trial court by way of a motion to quash, which is what the appellant did in this cause. In sum, Thomas and his attorney were dissatisfied with the way the indictment was worded. They made demand upon the State, by motion to quash, to furnish them with more "notice" than was in the indictment, that is, of what criminal wrong was Thomas charged with committing. Thomas and his attorney, as any accused person could formerly do in this State, merely exercised a right the law previously granted and allowed an accused person. Here, the trial judge disagreed with appellant's position and overruled his motion to quash.

When the trial judge overruled Thomas' motion to quash, and did not require the State to replead, Thomas had no legal right at that time to appeal to this Court the ruling of the trial court. Such error, if any, in the trial court's failure to grant the motion to quash, could not be considered by this Court unless and until there was a final conviction in the trial court. In short, Thomas had to be convicted before he could appeal to this Court to challenge the ruling of the trial court on his motion to quash.[4] That is the law. The procedure outlined for challenging a trial court's ruling on a defendant's motion to quash is not only the law, but is the policy of this State, set by the Legislature of this State; the elected representatives of our citizenry.

This policy was recently reaffirmed by the citizens of this State when they declined to adopt a Constitutional amendment which would have allowed, for example, Thomas and his attorney to appeal the trial court's ruling on his motion to quash prior to trial.

It is implied by the State, in her well written briefs, that our decision today will return us to fifteenth century pleadings. It is true that Sir Thomas Littleton, a justice of the Common Pleas Court in England, once remarked:

\*   \*   \*   \*   \*   \*

. . . 'And know, my son, that it is one of the most honorable, laudable, and profitable things in our law to have the science of well pleading in actions reals and personals: and therefore I counsel thee especially to employ thy courage and care to learn this.'[5]

\*   \*   \*   \*   \*   \*

The fear of the State, and impliedly a majority of this Court, is misplaced, for the panel's decision did not mean that the prosecutor, who has prepared a valid indictment, must repeatedly return to a grand jury for a new indictment each time the defendant or his attorney files a motion to quash.[6]

I observe in this cause that a pre-trial hearing date was never set prior to the date of trial. It was, however, apparently agreed between the parties and the trial judge that all motions of the defendant would be heard on the day of the trial, as they were.[7]

---

4. If, however, the pleading on its face shows that the offense charged is so fundamentally defective that the trial court did not have jurisdiction, then writ of habeas corpus will lie. See *Ex parte Mangrum*, 564 S.W.2d 751 (Tex.Cr.App.1978); *Menefee v. State*, 561 S.W.2d 822 (Tex.Cr.App.1978). This is in contrast to the general rule that when there is a valid statute or ordinance under which a prosecution may be brought, habeas corpus is not available to test the sufficiency of the complaint, information, or indictment. See *Ex parte Oliver*, 374 S.W.2d 894, (Tex.Cr.App.1964).

5. Pound, Roscoe, *Jurisprudence*, Vol. V, at p. 480, (West Publishing Co. 1959).

6. Compare what a majority of this Court recently said in *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981), a death penalty case, at pp. 9–10 of the slip opinion. See also the discussion regarding amending complaints, informations and indictments found in the newsletter of the Texas District and County Attorneys Association, dated December 31, 1971.

7. I observe by the trial court's docket sheet that the parties appeared in court on six different occasions *for trial* before the cause was finally heard. The first trial setting date shown is December 12, 1977. The motion to quash

To eliminate the possibility of an attorney, or an accused if pro se, from presenting himself in court on the day of trial, with a motion to quash in hand, thereby challenging non-evidentiary allegations of the indictment, a trial court may invoke the salutary provisions of Art. 28.01, C.C.P.

Sec. 1. The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing. The defendant must be present at the arraignment, and his presence is required during any pre-trial proceedings. The pre-trial hearing shall be to determine any of the following matters:

.    .    .    .    .

(2) Pleadings of the defendant;

.    .    .    .    .

(4) Exceptions to the form or substance of the indictment or information;

.    .    .    .    .

Sec. 2. When a criminal case is set for such pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters. The record made at such pre-trial hearing, the rulings of the court and the exceptions and objections thereto shall become a part of the trial record of the case upon its merits.

*    *    *    *    *    *

In this cause, the appellant's motion to quash went to a crucial element of the indictment; the allegation of ownership. Appellant adequately set out in his motion the manner in which the indictment was subject to a motion to quash. The panel

opinion held that the indictment is subject to a motion to quash because it failed to state which manner of ownership, see V.T.C.A. Penal Code, § 1.07(a)(24), would be relied on by the prosecution at his trial, and ruled that for failure to grant the appellant's motion to quash, the trial court committed reversible error. I agree with that holding.

Additionally, the panel held that appellant's motion to quash the indictment was good because the indictment failed to give him adequate notice on the manner of *lack of effective consent.* Due to the expansive definition of effective consent in V.T.C.A. Penal Code, § 31.01(1), (2), and (4), it was held that the motion to quash should have been granted. I also agree with that holding.

Though the indictment in this cause appears to have been drawn in the language of our felony theft statute, and would therefore fall within the general rule that if an indictment drawn in the language of the penal statute involved it will usually be legally sufficient to provide a defendant with notice of the charged offense, nevertheless, as Judge W. C. Davis of this Court said in *Haecker v. State,* 571 S.W.2d 920 (1978), in quoting from *Conklin v. State,* 144 Tex.Cr.R. 343, 162 S.W.2d 973 (1942):

It is not always sufficient to follow the language of the statute. There are cases that require greater particularity, either from the obvious intention of the Legislature or from the application of known principles of law. *Id.* at page 921.

The majority today tells us the new rule is as follows: "The only viable alternative is allowing the trial judge sound discretion in granting a motion to quash." Additionally, we are told "that this Court [will] review the trial court's action on a case by case basis."

I fear the new rule will result in summary denials of motions to quash, as this decision allows trial courts to make their own determination as to when an indictment is "quashable," although this Court will still

was heard on April 11, 1978. Thomas, being indicted as a habitual criminal, remained and

has remained continuously confined since his arrest.

review "quashing" decisions. The "case-by-case" method, however, now leaves trial courts without clear-cut guidelines, and this Court has traditionally been averse to finding an abuse in a trial court exercising sound discretion. Thus, I fear, as Jerome Frank said: "The law always has been, is now, and will ever continue to be, largely vague and variable." Today, I believe we take one giant step forward to achieve that objective.

I respectfully dissent.[8]

---

**8.** The subject of amending indictments and informations may very well be an appropriate subject for the Legislature to consider in light of our decision, for I recognize that Art. 28.01, *supra*, is not a panacea to a trial judge's provincial problems.